George M. Kraw (California Bar No. 71551)
Katherine McDonough (California Bar No. 241426)
Kraw Law Group, APC
605 Ellis Street, Suite 200
Mountain View, California 94043
Telephone: 650-314-7800
Facsimile: 650-314-7899
gkraw@kraw.com
kmcdonough@kraw.com

Attorneys for:
Plaintiffs, Board of Trustees of the U.A. Local No. 343 Pension Plan, U.A. Local Nos. 343 and 355 Defined Contribution Plan, and Plumbers and Steamfitters Managed Health Care Plan; and

U.A. Local No. 343 Pension Plan,
U.A. Local Nos. 343 and 355 Defined Contribution Plan, and
Plumbers and Steamfitters Managed Health Care Plan; U.A. Local 343

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| U.A. LOCAL NO. 343 PENSION PLAN, U.A. LOCAL NOS. 343 AND 355 DEFINED CONTRIBUTION PLAN, PLUMBERS AND STEAMFITTERS MANAGED HEALTH CARE PLAN,<br><br>And,<br><br>BOARD OF TRUSTEES, U.A. LOCAL NO. 343 PENSION PLAN, BOARD OF TRUSTEES, U.A. LOCAL NOS. 343 AND 355 DEFINED CONTRIBUTION PLAN, BOARD OF TRUSTEES, PLUMBERS AND STEAMFITTERS MANAGED HEALTH CARE PLAN,<br><br>U.A. LOCAL 343,<br><br>Plaintiffs,<br><br>v.<br><br>G.A.R. PLUMBING, INC.,<br><br>Defendant. | Case No.: 2:19-cv-01381-JAM-DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS AND DEFENDANT'S COUNTER-CLAIM**<br><br>Hearing Date: February 23, 2021<br>Time:          1:30 PM<br>Judge:         Hon. John A. Mendez<br>Courtroom:  6, 14th Floor<br>                    (Pursuant to Video Conference or Teleconference under GENERAL ORDER NO. 618) |

**TABLE OF CONTENTS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INTRODUCTION ........................................................................................................ 1

UNDISPUTED MATERIAL FACTS ...................................................................... 3

    A.  ROBERTSON AND GAR DID NOT KEEP TIMEKEEPING RECORDS, THE PLAINTIFFS THEN PRESUMED HE WORKED FULL-TIME FROM JULY 1, 2016 TO DECEMBER 31, 2016, AS PERMITTED UNDER THE GOVERNING COLLECTIVE BARGAINING AGREEMENT ........................................................................................ 3

    B.  GAR HAS FAILED TO PRODUCE ANY DOCUMENTATION OF THE ACTUAL HOURS OF COVERED WORK PERFORMED BY MR. ROBERTSON; THEREFORE, THE TRUSTEES WERE PERMITTED UNDER THE MASTER LABOR AGREEMENT TO DETERMINE A FORMULA TO DETERMINE BENEFITS OWING, WHICH THEY DID. GAR HAS FAILED TO PAY IN ACCORDANCE WITH THAT FORMULA DESPITE ITS CLEAR OBLIGATION TO DO SO ................................................................................................ 5

STANDARD FOR SUMMARY JUDGMENT ...................................................... 6

LEGAL ARGUMENT .............................................................................................. 7

DAMAGES ................................................................................................................ 10

COUNTERCLAIM .................................................................................................. 12

    A.  THE COUNTER-DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR COUNTERCLAIM BECAUSE THE UNDISPUTED FACTS SHOW (1) THAT TRUSTEES HAVE NOT YET MADE A DETERMINATION ON GAR'S REQUEST FOR RETURN OF CONTRIBUTIONS AND (2) GAR HAS FAILED TO MEET ITS BURDEN TO SHOW THAT THE EQUITIES FAVOR RESTITUTION ............................................................ 12

    B.  COUNT II (29 U.S.C. § 185) FAILS AS A MATTER OF LAW BECAUSE A CLAIM FOR RETURN OF ERISA PENSION CONTRIBUTIONS CANNOT PROPERLY BE BROUGHT UNDER THE LMRA ...................................................................................... 15

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITES

**Cases:**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ..................................................... 6,7

*Award Service, Inc. v. N. Cal. Retail Clerks Unions & Food Employers Joint Pension Trust*, 763 F. 2d 1066 (9th Cir. 1985) ................................................................. 2,13,15

*Bds. of Trs. of the Northwest Ironworkers Health & Sec. Fund v. Western Rebar Consulting, Inc.*, 2:18-cv-00486-BAT, 2020 U.S. Dist. LEXIS 125011 *5 (July 15, 2020 W.D. WA.) ................................................................................................. 13

*Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988) ................................................................................................................. 7,9

*British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare*, 882 F.2d 371 (9th Cir.1989) ........................................................................................................... 13

*C.A.R. Trasnp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474 (9th Cir. 2000) ....................................................................................................................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 6,7

*Chase v. Trustees of Western Conference of Teamsters Pension Trust Fund*, 753 F.2d 744 (9th Cir. 1985) .................................................................................................... 13

*Combs v. King*, 764 F.2d 818 (11th Cir. 1985) .......................................................... 7,9

*Coomes v. Edmonds Sch. Dist. No. 15,* 816 F.3d 1255 (9th Cir. 2016) ...................... 7

*Houghton v. South*, 965 F.2d 1532 (9th Cir. 1992) ..................................................... 7

*In re Orable Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ...................................... 7

*Laborers' Health & Welfare Fund v. W.A. Rasic Constr. Co*., No. 96-56168, *6. 1998 U.S. App. LEXIS 10370 (9th Cir. 1998) ..................................................................... 14

*Moriarty v. Svec*, 429 F.3d 710 (7th Cir. 2005) .......................................................... 12

*Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual Supply, Inc*., 259 F.3d 1063 (9th Cir. 2001) ............................................................................................ 8,9

*Northwest Adm'rs, Inc. v. Albertson's, Inc*., 104 F.3d 253 (9th Cir.1996) ............. 12,13

**Statutes/Rules & Regulations/Other:**

29 U.S.C. § 185 ............................................................................................................. 15

29 U.S.C. §1132 (g)(2) ............................................................................................. 2,11,12

ERISA Section 403(c)(2)(A)(ii) .............................................................................. 12,13,15

Fed. R. Civ. P. 56(a) ....................................................................................................... 6

1

## INTRODUCTION

2     This is an action under the Employee Retirement Income Security Act of 1974 and Labor

3 Management Relations Act of 1947 to collect delinquent contributions owed under a collective

4 bargaining agreement to a family of benefit plans sponsored by U.A. Local 343.  The narrow

5 issue in this case is how many hours of covered plumbing work were performed by shareholder

6 George Robertson in the latter half of 2016 and how much in delinquent contributions are owed

7 for that work.[1]  As discussed below, it has come to light during discovery that Mr. Robertson is

8 ineligible to participate in the Defined Benefit and Defined Contribution Plans, so Plaintiffs are

9 not seeking contributions for those plans. There is now a counterclaim for return of ineligible

10 pension contributions for Mr. Robertson.

11     The Plaintiffs move for summary judgment on the following basis as to their claims and

12 the counterclaims:

13 (1)     It is undisputed that George Robertson performed covered plumbing work under the U.A.

14 Local 343 Master Labor Agreement for the period of July 1, 2016 to December 31, 2016 and did

15 not keep records of his time, so there was no way for the Trust Funds to determine the amount of

16 benefits owed for that work;

17 (2)     In this circumstance, the Master Labor Agreement to which GAR is signatory,

18 specifically Section 165(f), allows the Trustees to create a formula to compute the amount of

19 fringe benefits due and requires the Employer to comply with such formula and make payments

20 to the Trust Funds immediately upon being advised of the amount due:

21
22
23
24
25

> **F.** If a payment obligation is disclosed by the audit for which no fringe benefit payment was received by the Trust Funds, and for which the number of hours worked cannot be plainly ascertained, the Trustees will determine the appropriate formula to be applied to compute the fringe benefit contributions owed.  The Individual Employer shall be required to comply with such formula and make payments to the Trust Funds immediately upon being advised of the amount due.

26
27
28

---

[1] There were some contribution underpayments for bargaining unit employees identified in the same payroll testing audit that identified the underpayment for Mr. Robertson's contributions, but GAR has submitted payment for the principal contributions for those bargaining unit employees, so all that is owed now is liquidated damages and interest for those contributions.

(3)      Since Mr. Robertson did not keep track of his time, pursuant to Section 165 (f) of the Master Labor Agreement, the Trustees developed a formula and presumed that Mr. Robertson worked full-time, forty (40) hours a week, performing covered plumbing work from July 1, 2016 to December 31, 2016.  Despite GAR's clear obligation to do so under the Master Labor Agreement, GAR has not remitted full payment for those hours. The Plaintiffs are entitled to summary judgment because the Master Labor Agreement requires payment in accordance with the Trustees' formula once it is established that the number of hours worked cannot otherwise be determined.

Pursuant to ERISA Section 502 (g)(2), 29 U.S.C. §1132 (g)(2) an award of interest, liquidated damages, attorney's fees and costs is mandatory once delinquent contributions are found owing.

As to the counterclaim, Count I of the counterclaim fails for two reasons: (1) the plan administrator, the Board of Trustees, has not yet made a determination that a refund of contributions is owing because there is currently a payroll testing audit that they believe may show that there are underpayments in contributions which offset the payment of ineligible contributions and (2) the Defendant cannot show that the "equities favor restitution" given the existence of a pending payroll testing audit that may demonstrate underpayments that offset the overpayment in contributions.

Count II of the counterclaim which alleges a claim under the Labor Management Relations Act fails as a matter of law because a claim for return of ERISA pension contributions cannot properly be brought under the LMRA.  *Award Service, Inc. v. N. Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund*, 763 F. 2d 1066, 1071 (9th Cir. 1985).

## UNDISPUTED MATERIAL FACTS

**A.  ROBERTSON AND GAR DID NOT KEEP TIMEKEEPING RECORDS, THE PLAINTIFFS THEN PRESUMED HE WORKED FULL-TIME FROM JULY 1, 2016 TO DECEMBER 31, 2016, AS PERMITTED UNDER THE GOVERNING COLLECTIVE BARGAINING AGREEMENT**

The narrow issue in the case in chief is how many covered hours of plumbing work did George Robertson perform between July and December 2016. and how much is owed in contributions to the U.A. Local 343 Trust Funds on that work.

Mr. Robertson owns a plumbing services company with his wife, GAR Plumbing Partners, Inc. (Statement of Undisputed Facts "SUF" ¶¶7-10) GAR has a California C36 license that allows it to perform plumbing work. *Id.*  It has no other construction licenses. *Id*. In 2016, GAR's only source of revenue was plumbing services. *Id.* GAR was signatory to the U.A. Local 343 Master Labor Agreement during the testing period of April 2012 to December 31, 2016. (SUF ¶ 1).  Plumbing work is covered work under the U.A. Local 343 Master Labor Agreement for which hourly contributions are required to the U.A. Local 343 sponsored benefit plans ("Trust Funds"). (SUF ¶ 3-4).

In, 2016, GAR and George Robertson did not keep track of Mr. Robertson's time performing plumbing work even though they are required to do by Section 1059(a)(1) of ERISA and under the Master Labor Agreement. (SUF ¶13). The Plaintiffs conducted a payroll testing audit of GAR for the period of April 1, 2012 to December 31, 2016.  (SUF ¶11).   Because Mr. Robertson did not keep track of his time as required by ERISA and did not appear on the payroll, the Plaintiffs' auditors were unable trace the hours reported by GAR for Mr. Robertson to source documents to confirm that they were correct. (SUF ¶ 31). GAR reported no hours of covered work to the Trust Funds for the period July 1, 2016 to December 31, 2016. (SUF ¶ 30)  The Trust Funds' auditors reviewed cash disbursement journals and invoices for the period July 1, 2016 to December 31, 2016 and saw that GAR had made $20,368.93 in plumbing supply purchases, which indicated that Mr. Robertson might have performed covered work during this period. (SUF ¶ 30).

1    The Master Labor Agreement to which GAR is signatory, specifically Section 165(f),

2    allows the Trustees to create a formula to compute the amount of fringe benefits due when the

3    amount due cannot be "plainly ascertained" and requires the Employer to comply with such

4    formula and make payments to the Trust Funds immediately upon being advised of the amount

5    due:

6        **F.** If a payment obligation is disclosed by the audit for which no fringe benefit payment
         was received by the Trust Funds, and for which the number of hours worked cannot be
7        plainly ascertained, the Trustees will determine the appropriate formula to be applied to
         compute the fringe benefit contributions owed.  The Individual Employer shall be
8        required to comply with such formula and make payments to the Trust Funds
         immediately upon being advised of the amount due.

9

10   (SUF ¶ 27), Master Labor Agreement Section 165(f)) The Plaintiffs' auditor contacted the

11   Chairmen of the U.A. Local 343 Trust Funds and explained that in the circumstance where

12   adequate time records are not kept and it appears that covered work is performed, it is customary

13   testing procedure to determine the hours work to either (1) presume full-time work of forty (40)

14   hours a week or (2) to divide the material purchases by the journeymen wage rate and then to

15   shift the burden to the employer to show the actual hours of work performed.

16   The Chairmen of the U.A. Local 343 benefit funds decided to adopt a forty (40) hour a

17   week of covered work standard for Mr. Robertson for the period of July 1, 2016 and December

18   31, 2016. and then to shift the burden of proof to GAR to demonstrate the actual hours of work

19   performed.

20   GAR filed an appeal of this finding with the Trust Funds. No contemporaneous time

21   records or other documentation of Mr. Robertson's time for 2016 were provided (because none

22   exist).  Instead, his spouse Carolyn Robertson provide a conclusory statement in a letter that Mr.

23   Robertson only worked 40-55 hours during this period (without providing supporting

24   contemporaneous records) and also asserted (inaccurately) that the work Mr. Robertson

25   performed on the Munson home during that period was not covered under the Master Labor

26   Agreement. The Trustees therefore denied GAR's appeal. (SUF ¶33-34). Ms. Robertson included

27   a check to pay the amounts owed for the bargaining unit employees identified in the payroll

28   testing report and also for the 40-55 hours of work she claimed Mr. Robertson performed.

**B.      GAR HAS FAILED TO PRODUCE ANY DOCUMENTATION OF THE ACTUAL HOURS OF COVERED WORK PERFORMED BY MR. ROBERTSON; THEREFORE, THE TRUSTEES WERE PERMITTED UNDER THE MASTER LABOR AGREEMENT TO DETERMINE A FORMULA TO DETERMINE BENEFITS OWING, WHICH THEY DID.  GAR HAS FAILED TO PAY IN ACCORDANCE WITH THAT FORMULA DESPITE ITS CLEAR OBLIGATION TO DO SO**

GAR did not keep records Mr. Robertson's time (Statement of Undisputed Facts ("SUF") ¶ 13) so it has no evidence to meet its burden to show the actual hours of covered work performed by Mr. Robertson in 2016.  Mr. Robertson did provide a declaration under penalty of perjury in February 2020 stating that the work he performed at his acquaintance's  house on Green Valley Road in Fairfield, CA were tasks such as roofing and hanging drywall that were not covered under the collective bargaining agreement.  (SUF ¶ 36.) After the Plaintiffs subpoenaed Solano County building records and Steven Munson's records they discovered that Mr. Robertson had performed 151 hours of rough plumbing work on Steve. Munson's (the acquaintance's) house between July 1, 2016 and December 31, 2016, all of which is covered under the collective bargaining agreement. (SUF ¶¶ 4, 20-21.)  The statements in Mr. Robertson's declaration of February 2020 were not accurate.  Mr. Robertson later admitted in his deposition that he performed plumbing work on Mr. Munson's house between July 1, 2016 and December 31, 2016.  GAR owes contributions on the 151 hours of rough plumbing work performed on Mr. Munson's home, as it falls within the jurisdiction of the collective bargaining agreement.(SUF ¶ 19-20, 4).

But GAR's tax returns show that Mr. Robertson performed many more hours of covered plumbing work than what he has reported to the Trust Funds or what he performed on Mr. Munson's house.  GAR's only source of revenue is plumbing services and invoices it sends for covered plumbing work. (SUF ¶ 10).  Looking at GAR's tax returns for 2016, they received $249,579 from plumbing services, but that of course includes materials and costs of labor. (SUF ¶16).  Once the Costs of Goods Sold (which includes materials, costs of labor, equipment rentals etc.) is subtracted out, GAR made gross profit for plumbing services of $146,005. (SUF ¶17-18).

Mr. Robertson charged the Munsons $80 an hour for the rough plumbing work he did on their home (SUF ¶ 21), but this is a reduced rate because of their friendship.  He testified that with his typical clients he bills per fixture, such as toilets (which is why he has no record of his time).  But he estimated that he would expect to receive $120-130 per hour for the plumbing work that he performs for GAR. (SUF ¶ 29-31).

Subtracting from the gross profit of $146,005, the $12,080 (151 hours x $80) Mr. Robertson made from 1he 151 hours of rough plumbing work he did for Mr. Munson, leaves $133,925.  Dividing $133,925 by the $120-$130 Mr. Robertson estimates that GAR receives from performing plumbing services, would equate to approximately 1.030 to 1,116 hours of covered plumbing work.  Add to that the 151 hours of rough plumbing work admittedly performed on Mr. Munson's home would equate to between 1,181 hours and 1,267 hours of covered plumbing work in 2016, very much in line with the Plaintiffs; finding of 1080 underpaid hours of covered plumbing work.

## STANDARD FOR SUMMARY JUDGMENT

In deciding a motion for summary judgment under Rule 56, the courts in the Ninth Circuit apply the Supreme Court decisions of *Anderson, Celotex*, and their Ninth Circuit progeny. *Anderson v. Liberty Lobby,* 477 U.S. 242 (1986); *Celotex Corp. v Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact,

1
2

the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

3

*Coomes v. Edmonds Sch. Dist. No. 15,* 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re*

4

*Orable Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). "A motion for summary judgment

5

may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly

6

probative.'" *Anderson*, 477 U.S. at 249-50.

7

"When the party moving for summary judgment would bear the burden of   proof at trial,

8

'it must come forward with evidence which would entitle it to a directed verdict if the evidence

9

went uncontroverted at trial.'" *C.A.R. Trasnp. Brokerage Co. v. Darden Restaurants, Inc.*, 213

10

F.3d 474, 480 (9th Cir. 2000) (*quoting Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

11

Since it is undisputed that GAR failed to keep records of George Robertson's time, GAR

12

bears the burden to show the actual hours of covered work performed. Where, as here, the

13

opposing party will have the burden of proof at trial, the moving party need only point out "that

14

there is an absence of evidence to support the nonmoving party's case." *Celotex* at 325.

15

## LEGAL ARGUMENT

16

Section 1059(a)(1) of ERISA sets forth general record keeping and reporting

17

requirements. It mandates that, "[e]xcept as provided by paragraph (2) every employer shall, in

18

accordance with regulations prescribed by the Secretary, maintain records with respect to each of

19

his employees sufficient to determine the benefits due or which may become due to such

20

employees." 29 U.S.C. § 1059(a)(1). "The legislative history of ERISA demonstrates that it was

21

enacted, at least in part, to increase the information and data available to participants." *Combs v.*

22

*King*, 764 F.2d 818, 822 (11th Cir. 1985) (expressly adopted by the Ninth Circuit *in Brick*

23

*Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988)).

24

"The plain language of the statute clearly places a duty upon the employer to maintain records

25

that will permit a determination of when the benefits are due for employees..." *Combs*, 764 F.2d

26

at 823.

27

There are employers, like GAR, who fail to keep time records necessary to compute

28

benefits as required, which makes it impossible for an ERISA plan to determine the amount of

covered work performed or contributions due.  As noted below, the Ninth Circuit has adopted a

burden shifting standard in this circumstance.  The U.A. Local 343 Master Agreement has an

even stronger standard.  Specifically, the Master Labor Agreement to which GAR is signatory,

specifically Section 165(f), allows the Trustees to create a formula to compute the amount of

fringe benefits due and requires the Employer to comply with such formula and make payments

to the Trust Funds immediately upon being advised of the amount due:

> **F**. If a payment obligation is disclosed by the audit for which no fringe benefit payment
> was received by the Trust Funds, and for which the number of hours worked cannot be
> plainly ascertained, the Trustees will determine the appropriate formula to be applied to
> compute the fringe benefit contributions owed.  The Individual Employer shall be
> required to comply with such formula and make payments to the Trust Funds
> immediately upon being advised of the amount due.

Thus, the Trustees were entitled under the Master Labor Agreement to determine a

formula for benefits owing between June 1, 2016 to December 31, 2016, which they did when

they adopted the presumption that Mr. Robertson worked forty (40) hours a week, and under the

Master Labor Agreement GAR was required to pay in accordance with that formula

**immediately.**

Because of this language in the MLA requiring GAR to pay in accordance with the

Trustees' formula immediately, the Court need not even reach the Ninth Circuit burden shifting

standard to find in the Plaintiffs' favor.  The Master Labor Agreement requires payment in

accordance with the Trustees' formula.

However, Plaintiffs include a discussion of the Ninth Circuit's burden shifting approach

in case the Court finds that the applicable language in the MLA is not sufficient to require

payment of contributions in accordance with the Trustees' formula.

The Ninth Circuit created the burden shifting approach in *Brick Mason Pension Trust v.*

*Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988) and *Motion Picture Indus.*

*Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063 (9th Cir. 2001).

Once "trustees produce evidence raising genuine questions about the accuracy of the

employer's records and the number of hours worked by the employees, the burden shifts to the

employer to come forward with evidence of the precise amount of work performed." *Brick*

1    *Masons Pension Tr...*, 839 F.2d at 1338. In order to shift the burden to the employer, the trustees

2    must show: (1) that the employer failed to keep adequate records, (2) that some employees

3    performed covered work that was (3) unreported to the trust funds. *Motion Picture Indus.*

4    *Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1066 (9th Cir. 2001)

5           If the employer fails to meet its burden to show the extent of work performed, it is

6    sufficient for the Plaintiff to prove the extent of damage as a matter of "just and reasonable

7    inference." *Combs v. King*, 764 F.2d 818, 822 (11th Cir. 1985) (expressly adopted by the Ninth

8    Circuit in *Brick Masons*, 839 F.2d at 1338.

9           Under the foregoing standard, Plaintiffs are clearly entitled to summary judgment. First,

10   the Plaintiffs have established the three elements to shift the burden to GAR – (1) GAR concedes

11   it kept no records of Mr. Robertson's time; (2) GAR concedes that it did perform some covered

12   work during the period of July 1, 2016 and December 31, 2016, specifically Mr. Robertson

13   performed rough plumbing work on the Munsons' home and the $20,368.93 in plumbing supply

14   purchases during this period also show GAR was performing covered work; and (3) GAR failed

15   to report this work to the Trust Funds.

16          GAR has no evidence to meet its burden.  GAR kept no time records of any kind

17   concerning the plumbing work performed by Mr. Robertson.  Therefore, the amount of covered

18   work performed is a matter of "just and reasonable" inference, a standard the Plaintiffs clearly

19   meet.  First, the Trustees' initial decision to presume 40 hours a week of covered plumbing work

20   was based on customary payroll testing auditing practice and their authority under Section 165(f)

21   of the Master Labor Agreement.  Second, GAR's gross profit divided by Mr. Robertson's

22   estimated hourly rate for GAR's plumbing services, comes to 1,181 hours and 1,267 in 2016

23   when added to the plumbing work which he admittedly did on Mr. Munson's home, which is

24   slightly more than the 1,080 hours Plaintiffs estimated.

25          The Master Labor Agreement gives the Trustees the authority to create a formula to

26   calculate the benefits due for Mr. Robertson, which they did. And GAR is required to pay in

27   accordance with the Trustees' formula.  The MLA Language and the undisputed fact that GAR

28   failed to keep track of Mr. Robertson's time is sufficient for the Court to rule in the Plaintiffs

favor.  But even under the Ninth Circuit burden shifting standard the Plaintiffs are entitled to

Summary Judgment because (1) GAR has failed to meet its burden to show the actual hours

worked by Mr. Robertson and (2) the Plaintiffs presumption of the amount of hours worked is

supported by a reasonable inference from the undisputed evidence in the record.

**DAMAGES**

| **Contributions:** | $22,323.6 ($20.67 x 1,080) GAR submitted a check in April 2019 toward Mr. Robertson's hours in the amount of $1,756.00. Thus, **Total contributions owed are $20,567.60.** | The hourly contribution rate was $35.12 but subtracting out pension contributions of Defined Contribution: $1.50 Defined Benefit: $12.45 Defined Benefit Supplemental: $.50 leaves an hourly contribution rate of $20.67 per hour and Trustees presumed 1,080 hours of full-time work between July 1, 2016 and December 31, 2016 SUF 38-39 |
|---|---|---|
| **Interest of 12 percent per annum:** | **For convenience, the Trust Fund has chosen not to claim partial years of interest, Robertson, G**: $9,872.44 (.12 x 20,567.6 x 4 years. 2017, 2018, 2019, 2020) | McDonough Declaration ¶ D and E. Plumbers and Steamfitters Managed Health Care Trust Agreement, Amendment 1, U.A. Local 343 |

| | **GAR paid for these employees contributions in April 2019 but did not pay interest:** **Braser, K**.: $ 542.70 (.12 x 1,507.51 x 3 years 2016. 2017 and 2018) **Carmer, R:** $29.80 ($62.23 x.12 x 4 years, 2015, 2016, 2017 and 2018) **Utz, S: $478.60** (1994.20 x .12 x 2 years 2017, 2018) **Total: $10,923.55** | Apprenticeship Trust Agreement Amendment 1 Provide for interest in the amount of 12 percent per annum.  GAR Robertson paid the contributions for these bargaining unit employees in April 2019, leaving only interest due. |
|---|---|---|
| **Double Interest in lieu of liquidated damages of 20%:** | **$10,923.55** | |
| **Audit Testing Fees:** | **$ 5,353.25.** | McDonough Declaration, Exhibit E, Amendment 4. |
| **Total Owed:** | **$47,767.95** | Principal of **$20,567.60.** Interest of **$10,923.55** Double Interest: **$10,923.55** Audit Testing Fees: **$5,353.25.** |

**The Plaintiffs note that ERISA Section 1132 (g) provides as follows:**

**(2)** In any action under this subchapter by a fiduciary for or on behalf of a <u>plan</u> to

enforce <u>section 1145 of this title</u> in which a judgment in favor of the <u>plan</u> is awarded, the court shall award the <u>plan</u>—
- (A) the unpaid contributions,
- (B) interest on the unpaid contributions,
- (C) an amount equal to the greater of—
  - (i) interest on the unpaid contributions, or
  - (ii) liquidated damages provided for under the <u>plan</u> in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or <u>State</u> law) of the amount determined by the court under subparagraph (A),
- (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
- (E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the <u>plan</u>, or, if none, the rate prescribed under <u>section 6621 of title 26</u>.

(*See* ERISA Section 1132 (g); 29 U.S. Code § 1132(g)).

Where greater, Section 1132(g)(2) provides for double interest in lieu of liquidated damages. *see Moriarty v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005) (upholding a **double interest** award); An award of interest, liquidated damages (or interest in lieu thereof), reasonable attorney's fees and costs is mandatory when contributions are unpaid. *Northwest Adm'rs, Inc. v. Albertson's, Inc*., 104 F.3d 253 (9th Cir.1996). The Plaintiffs will move for an award of fees if judgment is entered.

## COUNTERCLAIM

**A.    The Counter-Defendants Are Entitled To Summary Judgment on Their Counterclaim Because The Undisputed Facts Show (1) That Trustees Have Not Yet Made a Determination on GAR's Request for Return of Contributions and (2) GAR Has Failed to Meet Its Burden to Show That The Equities Favor Restitution**

Section 403(c) of ERISA provides in pertinent part:
> (1) Except as provided in paragraph (2) ... the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

(2)(A) In the case of a contribution ...
> (ii) made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or

payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

Thus, ERISA provides for the return of contributions that an employer made to a multiemployer plan because of a mistake of fact. Section 403(c)(2)(A)(ii) provides that a refund of an employer's mistaken contribution is not prohibited within six months of **the date that a plan administrator determines that the contribution was made by mistake.** "**Based on this language, it appears that no refund can be made under this section without a determination by a plan.**" *Bds. of Trs. of the Northwest Ironworkers Health & Sec. Fund v. Western Rebar Consulting, Inc.*, 2:18-cv-00486-BAT, 2020 U.S. Dist. LEXIS 125011 *5 (July 15, 2020 W.D. WA.) (emphasis supplied). However, the Ninth Circuit has stated that a trust fund cannot escape its responsibilities under ERISA by denying that a mistake has been made. *Chase v. Trustees of Western Conference of Teamsters Pension Trust Fun*d, 753 F.2d 744, 752 (9th Cir. 1985).

While there is no express right of action under ERISA, the Ninth Circuit has concluded that an employer has an implied right of action under Section 403 to recover mistaken contributions. *British Motor Car Distrib., Ltd. v. San Francisco Auto. Indus. Welfare*, 882 F.2d 371, 374 (9th Cir.1989) (citing *Award Serv., Inc. v. Northern Cal. Retail Clerks Unions*, 763 F.2d 1066, 1068 (9th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S. Ct. 850, 88 L. Ed. 2d 890 (1986)) (stating that section 403 confers no right to refund expressly; "it merely permits the return of contributions mistakenly paid"). However, a showing of mistake of fact will not automatically result in a refund to the employer, the **employer must establish that the equities favor restitution.** *Award Serv.*, 763 F.2d at 1069 (emphasis supplied).

Here, GAR's claim for return of mistaken contributions fails on both elements because (1) the Trustees have not yet made a determination on GAR's request and (2) the equities do not favor restitution because there is a pending payroll testing audit which the Trustees have reason to believe will show the underpayment of contributions.

As noted above, no refund can be made under Section 403 of ERISA without a determination by the Plan that a refund is owing. It is undisputed that the Plan has not yet made a determination on GAR's request for return of contributions. McDonough Declaration, Exhibit

H.  The Trustees have a valid reason for deferring their decision, specifically their fiduciary duty to plan participants.  As the Chairman of the U.A. Local 343 Trust Funds has explained in his declaration, he has reason for concern that GAR is intentionally underpaying contributions. McCall Declaration ¶ 10.  Specifically, the hours reported to the Trust Fund by GAR are very low, often only twenty (20) hours in a transmittal month, even though the Trustees believe as shown by the evidence in this lawsuit that GAR typically performs many more hours of covered plumbing services. McCall Declaration ¶ 10 Also, GAR initially and for many months failed to comply with the payroll testing audit request issued in February 2020 (and had not produced any documents to comply at the time of August 2020 decision to defer the decision on GAR's request). *Id.*  The Trustees reasonably believe that the pending payroll audit may show the underpayment of bargaining unit employee contributions that will offset the overpayment of contributions, and for that legitimate reason have deferred making a decision on GAR's request for return of contributions until the pending payroll audit is complete.  GAR's claim for return of ineligible contributions fails because the Plan Administrator has not made a determination that a refund of contributions is owing.

Second, GAR cannot meet its burden to show that the equities favor restitution, as required for a return of contributions to an employer by an ERISA plan. In determining whether the "equities favor restitution" any affect on the beneficiaries of the Funds may be considered." *Laborers' Health & Welfare Fund v. W.A. Rasic Constr. Co.*, NO. 96-56168, *6. 1998 U.S. App. LEXIS 10370 (9th Cir. 1998).  Here, the Trustees have deferred their decision on GAR's request for return of contributions precisely because they are concerned about the beneficiaries in the Plan and their benefits.  They have reason to believe, based in part on the undisputed evidence in this lawsuit, that GAR is intentionally underpaying contributions and reporting much fewer hours of covered plumbing work than is actually being performed.  Because of this credible concern about the underpayment of contributions offsetting the overpayment of ineligible contributions, the equities do not favor restitution.

**B.   COUNT II (29 U.S.C. § 185) FAILS AS A MATTER OF LAW BECAUSE A CLAIM FOR RETURN OF ERISA PENSION CONTRIBUTIONS CANNOT PROPERLY BE BROUGHT UNDER THE LMRA**

Count II is a claim under Section 29 U.S.C. § 185; that particular section of the Labor Management Relations Act provides federal courts with jurisdiction over disputes over violations of collective bargaining agreements between an employer and a labor organization.   What the counterclaimant fails to realize is that 29 U.S.C. § 185 does not provide a cause of action for return of pension contributions.  Once paid into the plan, the contributions become plan assets governed by ERISA.  As plan assets, they cannot inure to the benefit of an employer unless and until the requirements of ERISA Section 403 are met.  Quite simply Section 185 of the Labor Management Relations Act does not provide the relief the counterclaimant is seeking.  The Ninth Circuit has been quite clear that there is no implied right of action for return of ERISA contributions under the LMRA:

> In our view the provisions of LMRA and ERISA are best rationalized if we conclude, as we do, that Congress intended to permit trustees to refund improperly paid contributions only where the conditions specified in section 403(c)(2)(A) of ERISA are met. Section 403(c)(2) of ERISA is an exception to the general rule prohibiting plan assets from inuring to the benefit of employers. If pension contributions were refundable under any set of circumstances other than those specifically enumerated in section 403(c)(2), their refund would violate section 403(c)(1). To curb abuse in the use of pension assets, Congress intended to limit the availability of refunds to just those situations described in section 403(c)(2). We refuse to alter the statutory scheme by implying a cause of action under the LMRA for the return of pension contributions which differs from that created by section 403(c)(2)(A) of ERISA.

*Award Service, Inc. v. N. Cal. Retail Clerks Unions*, 763 F. 2d 1066, 1071 (9th Cir. 1985).

## CONCLUSION

For the foregoing reasons, the Court should grant the Plaintiffs' summary judgment motion as to Plaintiffs' claims and the Defendant's counterclaims, and award contributions, interest, double interest, audit costs, and reasonable attorney's fees.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

KRAW LAW GROUP


Dated: <u>December 14, 2020</u>                    By: <u>/s/ Katherine McDonough</u>

Katherine McDonough

*Counsel for Plaintiffs*